UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

ROBERT DOYLE,

                      Plaintiff,  MEMORANDUM
        - versus -  AND ORDER
                                                                                                                              11-CV-5571 (JG) (MDG)

MIDLAND CREDIT MANAGEMENT, INC.,

                      Defendant.

A P P E A R A N C E S:

    LAW OFFICE OF TODD C. BANK
        119-40 Union Turnpike, 4th Floor
        Kew Gardens, New York 11415
    By:    Todd C. Bank
        *Attorney for Plaintiff*

    MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
        140 Broadway, 19th Floor
        New York, New York 10005
    By:    Jeffrey J. Imeri
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Robert Doyle brings this action against Midland Credit Management, Inc. ("MCM") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Doyle alleges that MCM, a debt collector, violated the FDCPA through a series of approximately 22 to 28 telephone calls to Doyle's cellular telephone in 2011. Doyle seeks statutory damages of $1,000 as well as costs, disbursements and attorney's fees. MCM moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. I heard argument on the motions on May 11, 2012. For the reasons discussed below, MCM's motion is granted in part and denied in part.

BACKGROUND

Doyle's complaint alleges the following nonconclusory facts, which I must assume to be true for the purpose of deciding this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Doyle is a resident of the Eastern District of New York. He is not a "consumer" for purposes of the FDCPA, as he is not "obligated . . . to pay any debt" to MCM. *See* 15 U.S.C. § 1692a(3). MCM is a "debt collector" within the meaning of FDCPA. *See id.* § 1692a(6).

In or around the fall of 2011, MCM called Doyle's cellular telephone approximately 22 to 28 times. On each occasion, MCM played a prerecorded message telling Doyle to hold on. For the first approximately five to eight telephone calls, Doyle hung up as soon as he heard the prerecorded message.

For the next approximately five to six telephone calls, Doyle stayed on the line and waited to speak to a person. Each time Doyle waited to speak to a person, the wait time ranged from a few seconds to a few minutes. Whenever Doyle actually spoke to a person, an MCM representative would ask to speak to a person whose name Doyle did not recognize, in connection with an account with an entity with which Doyle had never had an account. Each time Doyle informed the agent that they had dialed the wrong phone number, whereupon the MCM representative disconnected the call.

For the next approximately five to six phone calls, Doyle waited to speak to a representative, and then informed the representative that they had dialed the wrong number and directed MCM not to call his number again.

For the next approximately two to three phone calls, Doyle waited to speak to a representative, and then asked the representative who was calling him. The representatives refused to provide any identifying information and hung up.

On another approximately two to three phone calls, Doyle hung up as soon as he heard MCM's prerecorded message telling him to hold on.

Finally, on September 25, 2011, Doyle received a phone call from MCM and waited on hold for over five minutes before any representative came on the line. Doyle asked the representative to connect him to a supervisor. Doyle told the supervisor that MCM had dialed the wrong telephone number and directed MCM not to call again.

On November 22, 2011, MCM called again. Doyle waited on hold for at least two minutes before a representative came on the line. Doyle again requested to speak with a supervisor. Doyle again told the supervisor that MCM had dialed the wrong number and directed MCM not to call again.

Doyle filed his original complaint on November 14, 2011. After MCM requested a premotion conference in order to move to dismiss the complaint, Doyle sought leave to amend his complaint, which was granted. Doyle filed his amended complaint on March 23, 2012. Doyle alleges violations of 15 U.S.C. § 1692c(b) ("Communication in connection with debt collection – Communication with third parties") (Count I) and § 1692d ("Harassment or abuse") (Counts II-III).

On April 5, 2012, MCM filed the instant motion. Although it is styled as a motion for judgment on the pleadings, I construe the motion as a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), because the only operative pleading before me is the complaint.

DISCUSSION

A.  *Standard of Review for a Motion to Dismiss*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal viability and factual plausibility of a complaint. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the plausibility of a claim at this stage, the court must accept as true all of the factual allegations in the complaint. *Id.* However, this tenet does not apply to legal conclusions, which are not entitled to an assumption of truth. *Id.* at 678-80. Thus, setting aside any conclusory allegations, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

B.  *Analysis of Claims under the Fair Debt Collection Practices Act*

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) ("The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors."). The FDCPA forbids debt collection practices that are "unfair, deceptive, or harassing." *Id.*

1.  *The Section 1692c(b) Claim*

Count One of Doyle's amended complaint alleges a violation of § 1692c(b) ("Communication in connection with debt collection – Communication with third parties"). Section 1692c(b) states in full:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, *a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer*, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

(emphasis added).

Doyle alleges that MCM violated this provision because Doyle is a "person other than the consumer," and MCM communicated with him in connection with the collection of a debt.

I have previously rejected this interpretation of § 1692c(b). In *Bank v. Pentagroup Financial, LLC*, No. 08-CV-5293 (JG) (RML), 2009 WL 1606420 (E.D.N.Y. June 9, 2009), I held that non-consumers lack standing to sue under § 1692c. *Id.* at *4. I reasoned that "[t]he purpose of § 1692c is to protect the consumer's privacy and reputation," not to protect the rights of third parties. *Id.* Accordingly, Doyle, as an admitted non-consumer, lacks standing to sue MCM under § 1692c(b). Therefore, MCM's motion to dismiss Doyle's complaint is granted with respect to Count One, which is hereby dismissed.

2. *The Section 1692d Claims*

Counts Two and Three of Doyle's amended complaint allege violations of § 1692d ("Harassment or abuse"). Section 1692d states in relevant part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . .
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with

> intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

Presumably – based on the headers in his amended complaint and the argument he propounds in opposition to this motion – Doyle intends Count Two of his amended complaint to refer to a violation of the general prohibition of § 1692d (prohibiting "any conduct the natural consequence of which is to harass, oppress, or abuse") and Count Three to refer to a violation of the specific prohibition found in subsection (6) (prohibiting "the placement of telephone calls without meaningful disclosure of the caller's identity"). Because either is a violation of § 1692d, I will analyze them together.

MCM argues that Doyle lacks standing to bring a claim for a § 1692d violation, because he is not a consumer and does not stand in the shoes of a consumer. In the alternative, MCM argues that Doyle has failed to state a claim under § 1692d because he has not alleged that MCM had "any intent to annoy, harass, or oppress"; indeed, MCM invites me to conclude that MCM's conduct was not harassing as a matter of law because it did nothing other than place Doyle on hold. Def.'s Mem. at 10.

However, again, my answer to the arguments can be found in *Bank*, 2009 WL 1606420. In *Bank*, like here, the plaintiff was not himself a debtor, but was merely subjected to misdialed calls from the debt collector. *Id.* at *1. The defendant debt collector argued that the plaintiff lacked standing to sue because the plaintiff was not a consumer within the meaning of FDCPA. *Id.* at *3. However, I noted that the plain language of § 1692d protected "any person" from harassment, without limiting its application to consumers. *Id.* at *5. Moreover, I observed that the civil liability provision of FDCPA, § 1692k, which provides that "*any* debt collector who

fails to comply with *any* provision of this subchapter with respect to *any* person is liable to such person," 15 U.S.C. § 1692k(a) (emphasis added), intentionally utilizes the "broadest possible language" to allow *any person* exposed to a proscribed debt collection practice to sue. *Bank*, 2009 WL 1606420, at *3 (quoting *Conboy v. AT&T*, 84 F. Supp. 2d 492, 504 n.9 (S.D.N.Y. 2000)) (citing, *inter alia*, *Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1178 (11th Cir. 1985) (noting that one of the purposes of the FDCPA is that every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner); *Kerwin v. Remittance Assistance Corp*., 559 F. Supp. 2d 1117, 1123 (D. Nev. 2008) ("Persons who do not owe money but are subject to improper practices by debt collectors are covered by the FDCPA."); H.R. Rep. No. 131, 95th Cong. 1st Sess. 8 ("This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts. This bill will make collectors behave responsibly towards people with whom they deal.")).

Accordingly, I held that non-consumers had standing to sue for violations of § 1692d, so long as they could "'plead some injurious exposure to the communication.'" *Bank*, 2009 WL 1606420, at *3 (quoting *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 155 F. App'x 10, 11-12 (2d Cir. 2005) (summary order)). Thus, Doyle's claim under § 1692d does not fail for lack of standing.

The defendant in *Bank* also argued, as MCM does here, that the plaintiff's complaint failed to state a claim under § 1692d, because the complaint did not allege "any intent to annoy, harass, or oppress." *Id.* at *5. I expressly rejected this argument, holding as follows:

> Though it is true that one of the enumerated means of violating the anti-harassment prohibition is the making of telephone calls "with intent to annoy, abuse or harass," § 1692d(5), the list of specified violations is explicitly not exhaustive; it is not intended to "limit[ ]

7

> the general application" of the provision's sweeping prohibition of
> conduct "the natural consequence of which is to harass, oppress, or
> abuse any person in connection with the collection of a debt." A
> debt collection program that negligently misplaces numerous calls
> to a single wrong number could plausibly have the natural
> consequence of harassment or abuse.

*Id.*

This holding disposes of MCM's remaining argument here. Doyle has alleged receiving some 22 to 28 phone calls from MCM, all allegedly relating to the collection of a debt owed by an unknown third party. These phone calls persisted even after Doyle informed the MCM representatives that they had called the wrong number, directed them not to call again, and spoke to supervisors on numerous occasions to repeat these instructions. On at least some of these occasions, MCM refused to identify itself, even upon Doyle's request. On every occasion, Doyle had to wait on hold in order to speak to a person about the error. This conduct plausibly has "the natural consequence of . . . harass[ing], oppress[ing], or abus[ing]" the recipient of the phone calls, *see* 15 U.S.C. § 1692d, especially if, as Doyle alleges, on at least some occasions the callers did not "meaningful[ly] disclos[e]" their identity, *id.* § 1692d(6).

Accordingly, MCM's motion to dismiss is denied with respect to Counts Two and Three of Doyle's amended complaint.

## CONCLUSION

For the reasons stated above, MCM's motion to dismiss Doyle's amended complaint is granted with respect to his § 1692c(b) claim and denied with respect to his § 1692d claims. To the extent MCM moves for sanctions pursuant to 15 U.S.C. § 1692k(a)(3) and/or Fed. R. Civ. P. 11, on the ground that Doyle's claims are frivolous and were brought in bad faith for the purpose of harassing MCM, *see* Def.'s Mem. at 3 n.2, 9, the motion is denied.

So ordered.


John Gleeson, U.S.D.J.

Dated: May 11, 2012
      Brooklyn, New York